UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARK MALACHOWSKI,<br><br>Plaintiff,<br><br>v.<br><br>ROMONA A. DOHENY,<br><br>Defendant. | Case No. 21-cv-05751-VKD<br><br>**ORDER FOR REASSIGNMENT TO A DISTRICT JUDGE**<br><br>**REPORT & RECOMMENDATION RE PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT**<br><br>RE: DKT. NO. 53 |

Plaintiff Mark Malachowski, an attorney, brings this lawsuit against his former client, defendant Romona Doheny, for failure to pay for legal services he provided. After Ms. Doheny failed to respond to repeated attempts at service over approximately 18 months, the Clerk entered a default against her. Dkt No. 48. The Court denied Mr. Malachowski's prior motion for default judgment without prejudice. Dkt. No. 52. He now files this renewed motion. Dkt. No. 53.

Because Ms. Doheny has not appeared in this action and is in default, this Court does not have the consent of all parties. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *Williams v. King*, 875 F.3d 500 (9th Cir. 2017). Accordingly, the Court directs the Clerk of the Court to reassign this action to a district judge, with the following report and recommendation that Mr. Malachowski's motion for default judgment be granted in part and denied in part.

**REPORT AND RECOMMENDATION**

## I.  BACKGROUND

In April of 2019, Ms. Doheny was named as a defendant in a different lawsuit in this district, *Gilbert L. Loaec 2014 Trust et al v. Doheny,* Case No. 19-cv-02078-NC ("*Loaec* case"). *See* Dkt. No. 16 ¶ 2. She asked Mr. Malachowski to represent her in the matter, and the parties

signed a representation agreement.  Dkt. No. 16 ¶¶ 2-3; Dkt. No. 53-1, Ex. 1.  Mr. Malachowski represented Ms. Doheny from approximately May 1, 2019 until the case settled in January of 2020.  Dkt. No. 16 ¶¶ 2-3, 35.

Mr. Malachowski alleges that, as the case proceeded, Ms. Doheny fell behind on her legal bills.  Dkt. No. 16 ¶ 28.  He claims that when he confronted her on September 3, 2019 about her arrears, Ms. Doheny stated that she would pay Mr. Malachowski after she sold her home in Connecticut.  *Id.* ¶¶ 29, 45.  As the representation continued, Mr. Malachowski says he continued to remind Ms. Doheny of her unpaid legal bills, which Ms. Doheny continued to promise to pay. *Id.* ¶¶ 45-49.  A statement of account submitted to the Court shows that Ms. Doheny incurred $85,407.50 for services provided by Mr. Malachowski, of which she paid $54,500, leaving $30,907.50 unpaid.  Dkt. No. 53-1, Ex. 3.

On July 27, 2021, Mr. Malachowski filed this action against Ms. Doheny, asserting claims for breach of contract, fraud and deceit, account stated, quantum meruit, and "common counts" under California law.  *See* Dkt. No. 1.  In his complaint, Mr. Malachowski demanded $92,722.50 in compensatory and punitive damages, including treble damages, as well as costs of suit.  *Id.* at 10.

Serving Ms. Doheny with the complaint proved difficult.  Although Ms. Doheny lived in Connecticut at the time the *Loaec* case was filed, Mr. Malachowski believed she had moved to Florida when he filed this case.  *Id.* ¶¶ 2, 8.  Shortly before the initial case management conference in October 2021, Mr. Malachowski informed the Court that his "process servers [had] not been able to serve Defendant."  Dkt. No. 10 at 1.  In November 2021, he reported that process servers had attempted to serve Ms. Doheny at five different addresses in Florida with no success, and that he had received information suggesting she had moved back to Connecticut.  Dkt. No. 12-1 at 2-3. In view of these difficulties with service, Mr. Malachowski requested permission to serve Ms. Doheny by publication.  Dkt. No. 12.

The Court denied Mr. Malachowski's request for service by publication, noting that he had not attempted to serve Ms. Doheny in Connecticut.  Dkt. No. 15 at 2.  In addition, the Court also found that Mr. Malachowski had not complied with Cal. C.C.P. § 415.50's requirement that a

2

United States District Court
Northern District of California

1  complaint served by publication be supported by a sworn statement by the plaintiff.  *Id.* at 2-3;

2  Fed. R. Civ. P. 4(e)(1) (allowing for service to be made "following state law for serving a

3  summons in an action brought in courts of general jurisdiction in the state where the district court

4  is located").  In response, Mr. Malachowski filed a first amended complaint ("FAC") on

5  December 1, 2021.  Dkt. No. 16.  The FAC includes a verification but is otherwise identical to the

6  original complaint, except that it refers to, but does not include, the exhibits attached to the

7  original complaint.  *See id.* at 11.[1]

8      Mr. Malachowski continued his efforts to serve Ms. Doheny.  *See* Dkt. Nos. 17, 19, 21.  In

9  March 2022, he again moved to serve Ms. Doheny by publication.  Dkt. No. 21.  In support of that

10  motion, Mr. Malachowski reported that process servers had attempted service at several addresses

11  in Connecticut.  Dkt. No. 21-1 at 3-4.  At one residential address in Milford, the server attempted

12  service on six different days.  *Id.*  During one attempt, the server observed mail addressed to

13  "Romona Doheny" at the residence.  *Id.* at 3.  On another day, he was informed by neighbors that

14  the "Doheny Family" had lived at the property since 2021.  *Id.*  On one occasion, the server spoke

15  through the door of the residence with a woman who claimed not to know "Romona Doheny,"

16  refused to open the door, and told the server to leave.  *Id.* at 3.  During a later attempt, a woman

17  who would not answer the door threatened to call the police on the server.  *Id.* at 4.  These and all

18  other attempts at personal service on Ms. Doheny in Connecticut were unsuccessful.  *Id.* at 3-4.

19      On August 10, 2022, the Court granted Mr. Malachowski's second motion to serve Ms.

20  Doheny by publication pursuant to Cal. C.C.P. § 415.50.  Dkt. No. 30.  It also ordered Mr.

21  Malachowski to attempt service by mail, pursuant to Cal. C.C.P. § 415.40.  *Id.*  The Court noted

22  that "the circumstances described by Mr. Malachowski support a conclusion that Ms. Doheny is

23  evading service of process."  *Id.* at 2.

24      Mr. Malachowski's first attempt to serve the FAC by publication was improper.  *See* Dkt.

25  No. 35.  In his second attempt, Mr. Malachowski succeeded in having the summons published in

26  

27  [1] Mr. Malachowski did not seek leave to file the FAC, but he appears to have filed it in an effort to address the deficiencies noted in the Court's order denying his request for permission to serve the

28  original complaint by publication.  Dkt. No. 15 at 2-3.

1  four editions of the Connecticut Post in November and December of 2022.  *See* Dkt. No. 43.  Mr.

2  Malachowski says he also sent a copy of the summons to the Milford address by certified mail.

3  Dkt. No. 38.  The Court concluded that "service by publication was completed in accordance with

4  California Code of Civil Procedure § 415.50 on December 2, 2022."  Dkt. No. 45 at 1.  Ms.

5  Doheny did not respond to the FAC following publication, and the Clerk entered a default against

6  her on January 30, 2023.  Dkt. No. 48.

7       Mr. Malachowski filed his first motion for default judgment against Ms. Doheny on

8  January 28, 2023.  Dkt. No. 46.  The Court denied the motion without prejudice.  Dkt. No. 52.

9  The Court directed that any renewed motion for default judgment "must address all of the matters

10  necessary for a decision on the merits" of the motion, including:  (1) subject matter jurisdiction,

11  (2) personal jurisdiction, (3) why he is entitled to judgment and on which of his five claims, and

12  (4) why he is entitled to treble damages, attorneys' fees, and prejudgment interest.  *Id.* at 1-3.

## II.     LEGAL STANDARD

14       The Clerk must enter default against a party who fails to plead or otherwise defend an

15  action.  Fed. R. Civ. P. 55(a).  After entry of default, a court may, in its discretion, enter default

16  judgment.  Fed. R. Civ. P. 55(b)(2);[2] *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In

17  deciding whether to enter judgment, a court may consider the following factors: (1) the

18  possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the

19  sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a

20  dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7)

21  the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

22  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  In considering these factors, all factual

23  allegations in the plaintiff's complaint are taken as true, except those relating to damages.

24  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).  The court may also hold

25  a hearing to conduct an accounting, determine the amount of damages, establish the truth of any

27  ───────────────────

[2] "A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared."  Fed. R. Civ. P. 55(b)(2).  There are no such issues presented here.  Nor is there any indication that Ms. Doheny is a person in military service.  *See* 50 U.S.C. § 3931.

1    allegation by evidence, or investigate any other matter.  Fed. R. Civ. P. 55(b)(2).

2    **III.    DISCUSSION**

3        **A.    Service of process**

4        A default judgment entered against a defendant who was improperly served is void.  *See*

5    *S.E.C. v. Internet Sols. for Bus. Inc.*, 509 F.3d 1161, 1165 (9th Cir. 2007).  Rule 4(e)(1) allows for

6    service to be effectuated by "following state law for serving a summons in an action brought in

7    courts of general jurisdiction in the state where the district court is located or where service is

8    made."  Fed. R. Civ. P. 4(e)(1).  For the reasons explained in the Court's prior orders, the Court

9    finds that Ms. Doheny has been properly served.  *See* Dkt. Nos. 30, 35, 45.

10        **B.    Jurisdiction**

11        When a default judgment is sought, the court "has an affirmative duty to look into its

12    jurisdiction over both the subject matter and the parties."  *In re Tuli*, 172 F.3d 707, 712 (9th Cir.

13    1999) (cleaned up).  "The party seeking to invoke the court's jurisdiction bears the burden of

14    establishing that jurisdiction exists."  *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986).

15            **1.    Subject matter jurisdiction**

16        The FAC asserts only state law claims and invokes the Court's diversity jurisdiction under

17    28 U.S.C. § 1332.  Dkt. No. 16 ¶¶ 11, 33-67.  A federal court has diversity subject matter

18    jurisdiction over a case if the suit is between citizens of different states and the amount in

19    controversy exceeds $75,000, not including interest and costs.  28 U.S.C. § 1332(a); *Geographic*

20    *Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106 (9th Cir. 2010).  The FAC

21    alleges that Mr. Malachowski and Ms. Doheny are citizens of different states, California and

22    Florida, respectively.  Dkt. No. 16 ¶¶ 7-8.  While it appears from the record that Ms. Doheny may

23    now reside in Connecticut, there is nothing to suggest that she resides in California.  *See* Dkt. No.

24    30 at 2.

25        It is less clear that the amount in controversy exceeds $75,000.  "The amount in

26    controversy is determined from the face of the pleadings," which "means a federal court has

27    subject matter jurisdiction unless[,] upon the face of the complaint, it is obvious that the suit

28    cannot involve the necessary amount."  *Geographic Expeditions,* 599 F.3d at 1106 (cleaned up).

United States District Court
Northern District of California

5

1   "The fact that the complaint discloses the existence of a valid defense to the claim does not

2   eliminate federal jurisdiction." *Id.* at 1108 (cleaned up).  The amount in controversy is not "a

3   prospective assessment of a defendant's liability. . . Rather, it is the amount at stake in the

4   underlying litigation." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018)

5   (cleaned up).  In addition to compensatory damages, the amount in controversy includes punitive

6   damages, and attorneys' fees that may be awarded by statute or contract.  *Fritsch v. Swift*

7   *Transportation Co. of Arizona, LLC*, 899 F.3d 785, 793 (9th Cir. 2018).

8           When a plaintiff files suit in federal court, the Ninth Circuit uses the "legal certainty" test

9   to determine whether the complaint meets § 1332(a)'s amount in controversy requirement.  *Naffe*

10  *v. Frey*, 789 F.3d 1030, 1039 (9th Cir. 2015). "Under this test, the sum claimed by the plaintiff

11  controls if the claim is apparently made in good faith.  It must appear to a legal certainty that the

12  claim is really for less than the jurisdictional amount to justify dismissal." *Id.* at 1040 (quoting *St.*

13  *Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938)) (cleaned up).  The Ninth

14  Circuit recognizes three situations where the legal certainty test is met: (1) when the terms of a

15  contract limit the plaintiff's possible recovery; (2) when a specific rule of law or measure of

16  damages limits the amount of damages recoverable; and (3) when independent facts show that the

17  amount of damages was claimed merely to obtain federal court jurisdiction.  *Id.*  These narrow

18  exceptions make it "very difficult to secure a dismissal of a case on the ground that it does not

19  appear to satisfy the jurisdictional amount requirement." *Id.*; *Suber v. Chrysler Corp.*, 104 F.3d

20  578, 583 (3d Cir. 1997) (jurisdictional analysis is a "threshold matter that should involve the court

21  in only minimal scrutiny of the plaintiff's claims" and "the court should not consider in its

22  jurisdictional inquiry the legal sufficiency of those claims or whether the legal theory advanced by

23  the plaintiffs is probably unsound").

24          Mr. Malachowski alleges that Ms. Doheny failed to pay $30,907.50 of the total he invoiced

25  her for legal services—a sum well below the jurisdictional threshold.  *See* Dkt. No. 16 ¶ 66; Dkt.

26  No. 53 at 15-16.  However, the FAC seeks relief in the total amount of $92,722.50, which Mr.

27

28

United States District Court
Northern District of California

Malachowski says represents treble damages for his claim of fraud and deceit.[3]  Dkt. No. 16 at 10;

Dkt. No. 53 at 23; *see also id.* at 15-16.  Although the Court concludes below that Mr.

Malachowski is not entitled to an award of damages in this amount, this conclusion is not obvious

from the face of the FAC.  Mr. Malachowski's representation agreement with Ms. Doheny does

not limit his possible recovery, no statute or rule of law caps his damages at a particular amount,

and nothing in the record suggests that he claimed an amount of damages above $75,000 merely to

obtain federal court jurisdiction.  Thus, for purposes of the jurisdictional analysis, the Court cannot

conclude to a legal certainty that Mr. Malachowski's asserted claims for relief, including

attorneys' fees, do not satisfy the amount in controversy requirement for diversity jurisdiction.

### 2.  Personal Jurisdiction

Because no federal statute authorizes personal jurisdiction in this matter, California law

applies.  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

"California's long-arm statute is coextensive with federal due process requirements, so the

jurisdictional analyses under state law and federal due process are the same."  *Id.*  "For a court to

exercise personal jurisdiction over a nonresident defendant consistent with due process, that

defendant must have certain minimum contacts with the relevant forum such that the maintenance

of the suit does not offend traditional notions of fair play and substantial justice."  *Id.* (cleaned up).

Mr. Malachowski does not clearly state whether he believes the Court may exercise

general or specific personal jurisdiction over Ms. Doheny, but he appears to rely solely on specific

jurisdiction.  Courts in the Ninth Circuit analyze specific jurisdiction under a three-prong test:

> (1) The non-resident defendant must purposefully direct his
> activities or consummate some transaction with the forum or
> resident thereof; or perform some act by which he purposefully
> avails himself of the privilege of conducting activities in the forum,
> thereby invoking the benefits and protections of its laws; (2) the
> claim must be one which arises out of or relates to the defendant's
> forum related activities; and (3) the exercise of jurisdiction must
> comport with fair play and substantial justice, i.e. it must be
> reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  Mr. Malachowski

---

[3] The FAC also asks for an award of "costs of suit" and "such other and further relief as the Court deems just and proper."  Dkt. No. 16 at 10.

United States District Court
Northern District of California

1   bears the burden of satisfying the first two prongs. *Mavrix Photo*, 647 F.3d at 1228. If he does so,

2   then the burden would shift to Ms. Doheny "to set forth a 'compelling case' that the exercise of

3   jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S.

4   462, 476-78 (1985)).

5                          a.      **Purposeful availment and purposeful direction**

6           "The first prong of the specific jurisdiction test refers to both purposeful direction and

7   purposeful availment." *Id.* For cases involving contracts, the jurisdictional analysis focuses on

8   whether the defendant purposely availed herself of the privilege of conducting activities in the

9   forum state. *Schwarzenegger*, 374 F.3d at 802. For cases involving tortious conduct, courts

10  employ a purposeful direction analysis, applying an "effects" test. *Mavrix Photo, Inc.*, 647 F.3d at

11  1228.[4]

12          Although the FAC asserts both contract and tort claims, Mr. Malachowski relies

13  exclusively on the argument that Ms. Doheny purposefully availed herself of the privilege of

14  conducting activities in California. *See* Dkt. No. 53 at 4-8. He points to the following facts: Ms.

15  Doheny retained him to represent her in the *Loaec* case in this District from May 2019 to January

16  2020; she entered into a representation agreement with him for that purpose; the *Loaec* case was

17  venued in this District and she was subject to personal jurisdiction here; and she actively

18  participated in the defense of that action, including in a mediation.[5] Dkt. No. 53 at 4-5. Mr.

19  Malachowski also alleges that he is, and at the time of the representation was, a California attorney

20  who resides in this District. Dkt. No. 16 ¶ 7.

21          These activities are sufficient to support a finding that Ms. Doheny purposely availed

22  herself of the privilege of conducting activities in California when she retained Mr. Malachowski

23  to represent her in the *Loaec* matter, entered into a written agreement with him for that purpose,

24  _____

25  [4] The "effects" test is based on the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783
    (1984) and "requires that the defendant allegedly must have (1) committed an intentional act, (2)
26  expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be
    suffered in the forum state." *Mavrix Photo, Inc.*, 647 F.3d at 1228 (cleaned up).

27  [5] Mr. Malachowski also alleges that Ms. Doheny visited family in Sunnyvale, California in April
28  of 2019, but this visit appears to be unrelated to his representation of her in the *Loaec* case. Dkt.
    No. 16 ¶ 15.

United States District Court
Northern District of California

and accepted legal services from Mr. Malachowski in connection with her defense in the action. *See Burger King*, 471 U.S. at 479 ("prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" may be considered in determining whether the defendant established minimum contacts); *see also Vorys, Sater, Seymour & Pease v. Ryan*, 154 Cal. App. 3d 91, 94-95 (1984) (concluding that "retaining an attorney in another state gives that state personal jurisdiction in subsequent disputes over attorneys' fees"); *cf. Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990) (applying purposeful availment analysis where some of plaintiff's claims regarding legal representation sounded in tort, but all claims arose out of plaintiff's contractual relationship with lawyer).

Although Mr. Malachowski does not address whether Ms. Doheny purposefully directed her allegedly tortious conduct to California, the allegations of the FAC are sufficient to support a finding that she did. For his fraud and deceit claim, Mr. Malachowski alleges that Ms. Doheny falsely promised that she would pay the amount she owed him for representing her in the *Loaec* case, and that he relied on those promises in continuing the representation. *See* Dkt. No. 16 ¶¶ 44-52. The Court may reasonably infer from these allegations that Ms. Doheny knew that her failure to pay as promised would cause harm to Mr. Malachowski in California. *See Mavrix Photo, Inc.*, 647 F.3d at 1228.

### b.    Arising out of or relating to

The second prong of the Ninth Circuit's test, whether the claim arises out of or relates to the defendant's forum-related activities, is easily satisfied. *See Schwarzenegger*, 374 F.3d at 802. All of Mr. Malachowski's claims concern Ms. Doheny's alleged failure to pay for services he says he provided pursuant to the parties' representation agreement and continued to provide after she separately promised to pay all past due legal bills. *See* Dkt. No. 16 ¶¶ 34-39, 44-52.

### c.    Reasonableness

The third prong of the Ninth Circuit's test, that the exercise of jurisdiction comports with fair play and substantial justice, is also satisfied. *See Schwarzenegger*, 374 F.3d at 802. It is not unreasonable for the client of a local attorney retained to defend a case venued here to expect to be haled into court in California for failure to pay what she owed her attorney. *See, e.g., Daar &*

1    *Newman v. VRL Int'l*, 129 Cal. App. 4th 482, 493 (2005) ("Appellant is a California law firm

2    which provided valuable legal assistance to respondent.  It would be unjust to allow an out-of-state

3    corporation . . . to authorize retention of the California firm and then avoid paying the firm fees it

4    claims due for activities undertaken on the corporation's behalf in California.").  As Ms. Doheny

5    has not appeared and has not offered any argument (let alone a compelling one) that the exercise

6    of jurisdiction here would be unreasonable, the Court concludes that the exercise of specific

7    jurisdiction in this action is fair and just.

8         Because all three prongs of the Ninth Circuit's specific jurisdiction test are satisfied, the

9    Court finds that it has specific personal jurisdiction over Ms. Doheny in this matter.

10        **C.    *Eitel* Factors**

11        The *Eitel* factors weigh in favor of entering default judgment on Mr. Malachowski's

12   breach of contract and account stated claims, but not on his fraud and deceit, quantum meruit, and

13   "common counts" claims.

14             **1.    Possibility of prejudice to Mr. Malachowski**

15        The first *Eitel* factor requires the Court to consider whether Mr. Malachowski would be

16   prejudiced if default judgment is not entered.  The record demonstrates that Ms. Doheny failed to

17   appear in this matter and failed to defend this action.  In addition, the record also suggests that Ms.

18   Doheny evaded service of process.  *See* Dkt. No. 30 at 2.  Mr. Malachowski apparently made other

19   attempts to resolve this dispute.  Letters attached as exhibits to Mr. Malachowski's original

20   complaint indicate that he offered Ms. Doheny an opportunity to arbitrate any disputed fees.  Dkt.

21   No. 1, Ex. 5; Dkt. No. 16 ¶ 32.  In these circumstances, the Court agrees that unless default

22   judgment is entered, Mr. Malachowski has no other means of recourse.

23        This factor weighs in favor of default judgment.  *See, e.g.*, *Ridola v. Chao*, No. 16-cv-

24   02246-BLF, 2018 WL 2287668, at *5 (N.D. Cal., May 18, 2018) (finding that the plaintiff would

25   be prejudiced if default judgment were not entered because she "would have no other means of

26   recourse against Defendants for the damages caused by their conduct").

27             **2.    Sufficiency of the complaint and likelihood of success on the merits**

28        The second and third *Eitel* factors address the sufficiency of the complaint and the

United States District Court
Northern District of California

10

1    likelihood that the plaintiff will succeed on the merits of his claims.  *Eitel*, 782 F.2d at 1471.

2    These factors require a court to determine whether the plaintiff has pleaded "facts sufficient to

3    establish and succeed upon its claims."  *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d

4    1039, 1055 (N.D. Cal. 2010).  Mr. Malachowski asserts five claims in the FAC, and he seeks

5    default judgment with respect to each claim.  Dkt. No. 53 at 9.  The Court considers the

6    sufficiency and likely merits of each claim, but treats the fifth claim as duplicative of the third and

7    fourth claims.

### a.    Claim 1:  breach of contract

9        To prevail on a claim for breach of contract under California law, Mr. Malachowski must

10   show that (1) a contract was formed; (2) he did everything required by the contract; (3) Ms.

11   Doheny did not do something required by the contract; and (4) he was harmed as a result.  *CSAA*

12   *Ins. Exch. V. Hodroj*, 72 Cal. App. 5th 272, 276 (2021).  Accepting the well-pleaded allegations of

13   the FAC as true, the Court concludes that Mr. Malachowski has established all the elements of his

14   breach of contract claim.  As alleged in the FAC:  Mr. Malachowski entered into a written

15   representation agreement with Ms. Doheny (Dkt. No. 16 ¶ 34; Dkt. No. 53-1, Ex. 1); he fulfilled

16   his obligations under the agreement by representing Ms. Doheny in the *Loaec* matter (Dkt. No. 16

17   ¶¶ 34-35); Ms. Doheny failed to pay the fees for legal services rendered by Mr. Malachowski, as

18   reflected in a statement showing an unpaid balance in the amount of $30,907.50 (Dkt. No. 16

19   ¶¶ 36-37; Dkt. No. 53-1, Ex. 3); and he has been harmed by Ms. Doheny's nonpayment (Dkt. No.

20   16 ¶ 39).  Accordingly, the second and third *Eitel* factors weigh in favor of default judgment on

21   this claim.

### b.    Claim 2:  fraud and deceit

23       The FAC refers to several species of fraud, including "promissory fraud" and "constructive

24   fraud."  Dkt. No. 16 ¶¶ 30, 41-43.  However, as explained in his motion, Mr. Malachowski's

25   second claim for relief appears to be based a theory of fraudulent representation.  *See* Dkt. No. 53

26   at 12-13.  To prevail on such a claim Mr. Malachowski must show (1) a knowingly false

27   representation by Ms. Doheny; (2) an intent to deceive or induce reliance; (3) justifiable reliance

28   by Mr. Malachowski; and (4) resulting damages.  *Serv. by Medallion, Inc. v. Clorox Co.*, 44 Cal.

United States District Court
Northern District of California

App. 4th 1807, 1816, (1996).  Any reliance on an allegedly false representation must be reasonable.  *See Soliman v. Philip Morris Inc.*, 311 F.3d 966, 975-76 (9th Cir. 2002).  In addition, there must be a "complete causal relationship between the alleged misrepresentations and the harm claimed to have resulted therefrom."  *Orcilla v. Big Sur, Inc.*, 244 Cal. App. 4th 982, 1007 (2016) (cleaned up).

A plaintiff must plead fraud with specificity.  Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). The FAC alleges that on September 3, 2019 Ms. Doheny told Mr. Malachowski that she did not have the money to pay her outstanding legal bills, but would pay them after she sold her home in Connecticut.  Dkt. No. 16 ¶¶ 45-48.  Apart from the representation that Ms. Doheny allegedly made to Mr. Malachowski on September 3, 2019, the FAC does not plead any false representation with specificity.  In addition, the FAC's allegations of knowing falsity and intent to deceive or induce reliance are entirely conclusory.  *Id.* ¶¶ 48-50.  *See DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (allegations that "parrot the language" of claim are not well pleaded); *Triumph Furniture Processing-Exp. Joint Stock Co. v. Everest Furniture Co.*, No. 13-CV-01729 NC, 2013 WL 9600372, at *3 (N.D. Cal. Aug. 29, 2013) ("conclusory allegations" that defendant acted "willfully and maliciously" were "insufficient to show the required elements of promissory fraud").  As for the FAC's allegations of causation and harm, the Court notes that with respect to Ms. Doheny's September 3, 2019 representation, Mr. Malachowski can only have relied on that representation with respect to services he continued to provide after that date and not for services provided earlier in the representation before Ms. Doheny made the allegedly false promise.

Although Mr. Malachowski's claim for fraud and deceit is not sufficiently pleaded in some respects, even if the Court were to assume the sufficiency of the pleading, Mr. Malachowski has not shown he is likely to succeed on the merits of this claim to the extent he claims Ms. Doheny deliberately lied when she told him she would pay her outstanding legal bills.  The account statement upon which Mr. Malachowski relies shows that Ms. Doheny paid him a total of $54,500 between May 2019 and February 2020.  Dkt. No. 53-1, Ex. 3.  In particular, the statement shows

United States District Court
Northern District of California

1    that Ms. Doheny made eight separate payments totaling $15,500.00 *after* she made the alleged

2    false promise on September 3, 2019.  *Id.*  While Ms. Doheny did not pay everything she owed Mr.

3    Malachowski, the record does not clearly support his claim that she intentionally induced him to

4    continue his representation of her even though she had no intention of paying him for those

5    services.  Accordingly, the second and third *Eitel* factors weigh against default judgment on this

6    claim.

7                        c.        **Claims 3-5:  account stated and quantum meruit**

8            In California, common counts are "general pleadings which seek[] to recover money owed

9    without necessarily specifying the nature of the claim."  *Title Ins. Co. v. State Bd. of Equalization*,

10   4 Cal. 4th 715, 731 (1992).  The transaction that creates the alleged debt may be either an "express

11   contract, a contract implied in fact, or a quasi-contract"—it "makes no difference." *Util. Audit Co.*

12   *v. City of Los Angeles*, 112 Cal. App. 4th 950, 958 (2003).  Thus, "common counts" describes a

13   type of claim, rather than a claim in itself.  *See* 4 Witkin, California Procedure (6th ed. 2023),

14   Pleading §§ 567-573.  Account stated and quantum meruit are both "common counts."  *Id.* §§ 571,

15   572; *see also Fagelbaum & Heller LLP v. Smylie*, 174 Cal. App. 4th 1351, 1355 (2009); *Iverson,*

16   *Yoakum, Papiano & Hatch v. Berwald*, 76 Cal. App. 4th 990, 996 (1999).  Accordingly, the Court

17   considers Mr. Malachowski's claims for account stated and quantum meruit; it does not separately

18   consider his fifth claim of "common counts."

19                        i.        **Account stated**

20           "An account stated is an agreement, based on prior transactions between the parties, that all

21   items of the account are true and that the balance struck is due and owing from one party to the

22   other."  *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1091 (9th Cir. 1989) (quoting *Trafton v.*

23   *Youngblood*, 69 Cal. 2d 17, 25 (1968)).  The elements of a claim for account stated are "(1)

24   previous transactions between the parties establishing the relationship of debtor and creditor; (2)

25   an agreement between the parties, express or implied, on the amount due from the debtor to the

26   creditor; (3) a promise by the debtor, express or implied, to pay the amount due."  *Martini E Ricci*

27   *Iamino S.P.A—Consortile Societa Agricola v. Trinity Fruit Sales Co.*, 30 F. Supp. 3d 954, 976

28   (E.D. Cal. 2014) (quoting *Zinn v. Fred R. Bright Co.,* 271 Cal. App. 2d 597, 600 (1969)).  "When

1    a statement is rendered to a debtor and no reply is made in a reasonable time, the law implies an

2    agreement that the account is correct as rendered." *Maggio, Inc. v. Neal*, 196 Cal. App. 3d 745,

3    753 (1987).

4              California law appears to be unsettled on the question of whether a claim for account stated

5    can be brought for the breach of a contract which obligates one party to pay a debt, but does not

6    specify the sum.  Several older cases hold that a "debt which is predicated upon the breach of the

7    terms of an express contract cannot be the basis of an account stated." *Moore v. Bartholomae*

8    *Corp.*, 69 Cal. App. 2d 474, 477 (1945); *see also Rio Linda Poultry Farms v. Fredericksen*, 121

9    Cal. App. 433, 435-36 (1932); *Bennett v. Potter*, 180 Cal. 736, 745 (1919)).  However, in

10   *Professional Collection Consultants v. Lauron*, 8 Cal. App. 5th 958 (2017), a California appellate

11   court recently remarked that it was "not convinced that [the *Moore*] rule applies in the context of

12   contracts that do not bind the debtor to pay a specific sum." 8 Cal. App. 5th at 971 n.5.  That court

13   did not resolve the question, but left it for "another day." *Id.*

14             Here, the representation agreement itself does not specify a sum that Ms. Doheny must

15   pay. *See* Dkt. No. 53-1, Ex. 1.  In these circumstances, the Court concludes that the FAC

16   adequately pleads all elements of a claim for account stated, even if there is some question about

17   whether Mr. Malachowski can proceed on both this claim and his breach of contract claim.  On

18   balance, the second and third *Eitel* factors weigh in favor of default judgment on this claim.

19                              **ii.      Quantum meruit**

20             "Quantum meruit refers to the well-established principle that the law implies a promise to

21   pay for services performed under circumstances disclosing that they were not gratuitously

22   rendered." *Huskinson & Brown v. Wolf*, 32 Cal. 4th 453, 458 (2004) (cleaned up).  The elements

23   of a claim for quantum meruit are "(1) that the plaintiff performed certain services for the

24   defendant, (2) their reasonable value, (3) that they were rendered at defendant's request, and (4)

25   that they are unpaid." *Cedars Sinai Med. Ctr. v. Mid-W. Nat. Life Ins. Co.*, 118 F. Supp. 2d 1002,

26   1013 (C.D. Cal. 2000) (citing *Haggerty v. Warner*, 115 Cal. App. 2d 468, 475 (1953)).

27             Under California law, a plaintiff may not "pursue or recover on a [quantum meruit] claim

28   if the parties have an enforceable agreement regarding a particular subject matter." *Klein v.*

United States District Court
Northern District of California

14

1    *Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1388 (2012).  Because Mr. Malachowski's quantum

2    meruit claim encompasses the same subject matter as his breach of contract claim, he cannot

3    recover on a separate claim for quantum meruit.  Accordingly, the second and third *Eitel* factors

4    weigh against default judgment on this claim.

5                    **3.      Sum of money at stake**

6            "The fourth *Eitel* factor concerns the relationship between the sum of money at stake and

7    the seriousness of the defendant's conduct."  *Fudy Printing Co. v. Aliphcom, Inc.*, No. 17-CV-

8    03863-JSC, 2019 WL 2180221, at *4 (N.D. Cal. Mar. 7, 2019).  A sum that is "substantial or

9    unreasonable" weighs against default judgment.  *Facebook, Inc. v. Kokhtenko*, No. 21-CV-03036-

10   YGR (LB), 2021 WL 7448619, at *7 (N.D. Cal. Dec. 3, 2021).  However, a sum that is "tailored

11   to the specific misconduct" of the defendant supports default judgment.  *Bd. of Trustees of the

12   Sheet Metal Workers Health Care Plan of N. California v. Superhall Mech.*, Inc., No. C-10-2212

13   EMC, 2011 WL 2600898, at *2 (N.D. Cal. June 30, 2011).

14           To the extent Mr. Malachowski seeks $30,907.50 (the amount of Ms. Doheny's

15   outstanding balance) on his breach of contract claim, the amount claimed is reasonable.  However,

16   Mr. Malachowski's demand for treble damages (calculated as three times the amount of Ms.

17   Doheny's outstanding balance) is disproportionate to the seriousness of her alleged misconduct,

18   particularly because Mr. Malachowski is unlikely to succeed on his fraud and deceit claim.  In any

19   event, as discussed below, Mr. Malachowski is not entitled to treble damages.

20           Accordingly, this factor weighs in favor of default judgment on Mr. Malachowski's claims

21   for breach of contract claim and account stated, but against default judgment on his fraud and

22   deceit and quantum meruit claims.

23                    **4.      Possibility of a dispute concerning material facts**

24           The fifth *Eitel* factor addresses the possibility of a dispute concerning material facts.  *Eitel*,

25   782 F.2d at 1471-72.  Where a plaintiff has filed a well-pleaded complaint alleging the elements

26   necessary to establish its claims, and the Clerk has entered default upon the defendant's failure to

27   answer, a court may find the possibility of a dispute as to material facts is unlikely.  *Fudy Printing*

28   2019 WL 2180221, at *5.

United States District Court
Northern District of California

15

1   As Ms. Doheny has not appeared and has not contested any of the allegations of the FAC,

2   the Court finds that there is little possibility of a dispute concerning material facts with respect to

3   any of the asserted claims.[6]  Because the FAC does not sufficiently state a claim for fraud and

4   deceit, and because Mr. Malachowski may not proceed with his quantum meruit claim, this

5   consideration is not relevant to those claims.

6   Accordingly, this factor weighs in favor of default judgment on Mr. Malachowski's breach

7   of contract and account stated claims only.

### 5.   Possibility of excusable neglect

9   The sixth *Eitel* factor concerns whether the default was due to excusable neglect.  *Eitel*,

10   782 F.2d at 1471.  Where a defendant "blatant[ly] attempts to resist service" or fails to appear after

11   being properly served, no excusable neglect will be found.  *NewGen, LLC v. Safe Cig, LLC*, 840

12   F.3d 606, 616 (9th Cir. 2016).  However, a defendant who "reasonably believe[s]" she is not

13   required to answer a suit may be excused.  *Eitel*, 782 F.3d at 1472.

14   As discussed above, the circumstances surrounding Mr. Malachowski's efforts to serve

15   Ms. Doheny, particularly at the Milford address in Connecticut, suggest that Ms. Doheny

16   attempted to evade service of process.  *See* Dkt. No. 30 at 2.  While Ms. Doheny might have a

17   reasonable excuse for her failure to appear, the Court cannot discern one from the present record.

18   Accordingly, this factor weighs in favor of default judgment.

### 6.   Policy favoring decisions on the merits

20   The seventh *Eitel* factor requires consideration of the "strong policy favoring decisions on

21   the merits" embodied in the federal rules.  *Eitel*, 782 F.2d at 1472.  While the Court prefers to

22   decide matters on the merits, Ms. Doheny's failure to participate in this litigation makes that

23   impossible.  *See Ridola*, 2018 WL 2287668 at *13 ("Although federal policy favors decision on

24   the merits, Rule 55(b)(2) permits entry of default judgment in situations, such as this, where a

---

[6] The Court notes, however, that typically a fraud claim involves questions of fact involving determinations of intent and evaluations of credibility that can only be resolved by a jury.  *See Garter-Bare Co. v. Munsingwear, Inc.*, 650 F.2d 975, 981 (9th Cir. 1980) ("Fraud claims normally are so larded with fact issues (including issues as to intent) that summary judgment is seldom possible.").

1    defendant refuses to litigate.").  Default judgment therefore is Mr. Malachowski's only recourse.

2    *See United States v. Roof Guard Roofing Co, Inc.*, No. 17-cv-02592-NC, 2017 WL 6994215, at *3

3    (N.D. Cal., Dec. 14, 2017) ("When a properly adversarial search for the truth is rendered futile,

4    default judgment is the appropriate outcome.").

5                                **7.    Conclusion**

6         Having considered the *Eitel* factors, the Court finds that they weigh in favor of default

7    judgment on Mr. Malachowski's claims for breach of contract and account stated, and against

8    default judgment on his claims for fraud and deceit and quantum meruit.

9         **D.    Requested Relief**

10        Because this Court concludes that default judgment is warranted, it now considers Mr.

11   Malachowski's requests for relief.  "A default judgment must not differ in kind from, or exceed in

12   amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  After a default has been

13   entered, the well-pleaded factual allegations in the complaint are taken as true, except for those

14   regarding damages. *Craigslist*, 694 F. Supp. 2d at 1051.  If the complaint does not contain the

15   facts necessary to establish damages, they are not established by default. *Philip Morris USA, Inc.*

16   *v. Castworld Prod., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003).

17                             **1.    Compensatory damages**

18        As discussed above, Mr. Malachowski has adequately pleaded his claims for breach of

19   contract and account stated.  He is entitled to compensatory damages in the amount Ms. Doheny

20   owes him for his legal services.  In his declaration in support of this motion, Mr. Malachowski

21   claims he is owed $30,907.50.  Dkt. No. 53-1 ¶ 16.  That number is supported by the account

22   statement submitted as an exhibit to that declaration.  Dkt. No. 53-1, Ex. 3.  This same amount is

23   alleged in the FAC.  Dkt. No. 16 ¶ 65.

24                              **2.    Treble damages**

25        The FAC also includes a demand for treble damages, but does not cite any authority for

26   that relief. *See* Dkt. No. 16 at 10.  In his motion for default judgment, Mr. Malachowski says that

27   he is entitled to treble damages under California Penal Code § 496(c) as construed by the

28   California Supreme Court in *Siry Investments, L.P. v. Farkhondehpour*, 13 Cal. 5th 333 (2022).

1    *See* Dkt. No. 53 at 15-16, 23.

2        Mr. Malachowski's demand is baseless.  The FAC asserts no claim for relief under Penal

3    Code § 496(c).  Section 496(c) sets forth a right to special civil remedies for violations of Penal

4    Code § 496(a).  Section 496(a) defines the criminal offense of receiving stolen property, which

5    requires that a plaintiff show "(i) property was stolen or obtained in a manner constituting theft,

6    (ii) the defendant knew the property was so stolen or obtained, and (iii) the defendant received or

7    had possession of the stolen property."  *Switzer v. Wood*, 35 Cal. App. 5th 116, 126 (2019).  In

8    *Siry Investments*, the California Supreme Court concluded that § 496(c) provides for treble

9    damages whenever property is obtained in "any manner constituting theft."  *Siry Investments*, 13

10   Cal. 5th at 361.  However, these remedies are limited to claims where a plaintiff establishes

11   "criminal intent on the part of the defendant beyond mere proof of nonperformance or actual

12   falsity."  *Id.* at 361-62 (cleaned up). The FAC pleads neither theft of personal property nor

13   criminal intent.  Accordingly, Mr. Malachowski is not entitled to an award of treble damages.

14            **3.    Attorneys' fees**

15       Mr. Malachowski asks for an award of attorneys' fees in the amount of $9,780 for his work

16   prosecuting this case.  *See* Dkt. No. 53-1, Ex. 7.  A request for attorneys' fees must be made by

17   motion and must be filed no later than 14 days after the entry of judgment.  *See* Fed. R. Civ. P.

18   54(d)(2)(A); (B)(i).  It must also "specify the judgment and the statute, rule, or other grounds

19   entitling the movant to the award."  Fed. R. Civ. P. 54(d)(2)(B)(ii).

20       Although the FAC does not include a demand for attorneys' fees, in his motion for default

21   judgment, Mr. Malachowski cites his representation agreement with Ms. Doheny as the basis for

22   the requested fees.  Dkt. No. 53-1 ¶ 4.  The representation agreement provides that the prevailing

23   party in any action to enforce it is entitled to an award of reasonable attorneys' fees.  Dkt. No. 53-

24   1, Ex. 1 ¶ 10.  However, a fee shifting provision like this is unenforceable as a matter of California

25   law when an attorney litigates in propia persona to enforce a contract to which the attorney is a

26   party.  *See Trope v. Katz*, 11 Cal. 4th 274, 292 (1995); *Soni v. Wellmike Enter. Co.*, 224 Cal. App.

27   4th 1477, 1481-82 (2014); *see also Farmers Ins. Exch. v. L. Offs. of Conrado Joe Sayas, Jr.*, 250

28   F.3d 1234, 1236-37 (9th Cir. 2001) (federal court sitting in diversity applies state law regarding

United States District Court
Northern District of California

18

attorneys' fees including the *Trope* rule).  Because Mr. Malachowski has litigated this case in propia persona, he is not entitled to recover attorneys' fees on this ground.  He cites no other justification for an award of attorneys' fees.

### 4. Costs

A bill of costs must be filed within 14 days of entry of judgment and be supported by an affidavit.  Fed. R. Civ. P. 54(d)(1); Civil L. R. 54-1(a); 28 U.S.C. § 1924.  Filing fees are allowed as costs if paid by the claimant and fees for service of process are allowed to the extent reasonably required and actually incurred.  Civil L. R. 54-3(a)(1); (2).

In his motion for default judgment, Mr. Malachowski asks for an award of costs in the amount of $4,178.31.  *See* Dkt. No. 53-1, Ex. 8.  This includes $402 for the filing fee in this case, $1,562.75 in fees for his process server, and $2,213.56 in advertising expenses for the second, successful, attempt to serve Ms. Doheny by publication.  *Id.*  As Mr. Malachowski seeks to recover only his reasonable costs of service, he is entitled to recover the total amount claimed.  *See* Dkt. No. 35 (rejecting Mr. Malachowski's defective attempt to serve Ms. Doheny by publication).

### 5. Prejudgment interest

Mr. Malachowski also requests prejudgment interest.  Dkt. Nos. 53 at 23; 53-1 ¶ 21.  In diversity cases, a party's entitlement to prejudgment interest depends on the law of the applicable state.  *Baker v. Garden Grove Med. Invs., Ltd.*, 306 F. App'x 393, 395 (9th Cir. 2009).

California Civil Code § 3287(a) provides that "every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day."  Cal. Civ. Code § 3287(a).  Damages are certain when the defendant "actually knows the amount owed" or could have computed that amount from "reasonably available information."  *Children's Hosp. & Med. Ctr. v. Bonta*, 97 Cal. App. 4th 740, 774 (2002).  Absent an alternative agreement, the interest rate is ten percent per annum.  Cal. Civ. Code § 3289(b).

Mr. Malachowski is entitled to prejudgment interest.  His breach of contract and account stated damages are a sum certain of $30,907.50 and the FAC alleges that this amount was known to Ms. Doheny.  Dkt. No. 53-1 ¶ 16.  In his motion for default judgment, Mr. Malachowski

calculates interest using an accrual date of July 27, 2021, the day this lawsuit was filed. *Id.*, Ex. 9. Accepting this accrual date, the Court concludes that Mr. Malachowski is entitled to interest of ten percent per annum on the principal amount of $30,907.50 from July 27, 2021 to the date of judgment.

## IV.     CONCLUSION

Because not all parties have consented to a magistrate's jurisdiction, the Court orders that this case be reassigned to a district judge.  For the reasons discussed above, the Court recommends that Mr. Malachowski's motion for a default judgment be granted as to his breach of contract and account stated claims and denied as to his remaining claims.  The Court further recommends that judgment be entered in the amount of $30,907.50, plus prejudgment interest calculated at a rate of ten percent per annum from July 27, 2021 to the date of judgment, and that Mr. Malachowski be awarded costs in the amount of $4,178.31.

Mr. Malachowski shall promptly serve Ms. Doheny with a copy of this report and recommendation by delivering a copy of it to her address in Milford, Connecticut, or to her current address if known, by personal service or United States mail.  Any party may serve and file objections to this report and recommendation within 14 days after being served.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Civ. L. R. 72-3.

**IT IS SO ORDERED.**

Dated: July 20, 2023

VIRGINIA K. DEMARCHI
United States Magistrate Judge

United States District Court
Northern District of California